# EXHIBIT A

**FILED: NEW YORK COUNTY CLERK 03/19/2019 11:40 AM**                 INDEX NO. 651601/2019
NYSCEF DOC. NO. 1                                                   RECEIVED NYSCEF: 03/19/2019

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------------X

MANHATTAN CRYOBANK, INC.,

              Petitioner,

For an Order Pursuant to Article 75 of
CPLR Confirming Arbitration Award

           -against-

MEGAN HENSLEY, individually and as next of
Friend of          ,

              Respondent.

-------------------------------------------------------------------------X

Index No._____

**VERIFIED PETITION
TO CONFIRM
ARBITRATION
AWARD**

        Petitioner Manhattan CryoBank, Inc. ("MCB"), by its undersigned counsel, hereby alleges and says:

        1.    Petitioner seeks, pursuant to CPLR §§ 7510 and 7514, an order confirming and entering judgment upon an arbitral award delivered to the parties on August 8, 2018 (the "Final Award") by an arbitrator appointed by the parties in the arbitration captioned *Manhattan Cryobank, Inc. v. Megan Hensley, individually and as a next friend of*      , JAMS Reference No. 1425021494 (the "Arbitration").  A true copy of the Final Award is attached hereto as Exhibit A.

        2.    Petitioner MCB is, and at all relevant times has been, a New York corporation with its principal office located in New York, New York.

        3.    Respondent Megan Hensley ("Hensley") is, and at all relevant times has been, an individual residing in St. Louis, Missouri.

**FILED: NEW YORK COUNTY CLERK 03/19/2019 11:40 AM**                     INDEX NO. 651601/2019
NYSCEF DOC. NO. 1                                                       RECEIVED NYSCEF: 03/19/2019

4.    On or about January 26, 2015, MCB and Hensley entered into an Agreement for

Purchase of Donor Sperm (the "Agreement"), pursuant to which Hensley purchased donor

sperm from MCB for the purpose of having a child with the use of donor sperm.

> 5.    Pursuant to Paragraph 26 of the Agreement, the parties also agreed that:
>
> All claims or disputes between or among the parties relating in any way to the
> Agreement or to any other rights or duties, whether or not arising under this
> agreement or its negotiable performance, interpretation, validity or breach, or to
> any other rights, duties whether or not arising under this agreement, shall be
> settled by final and binding arbitration in accordance with the then current
> Commercial Arbitration Rules of JAMS. Demand for arbitration shall be made
> within six (6) months after the dispute in question has arisen or be forever
> barred. The arbitration shall take place in New York, NY, before a single
> neutral arbitrator from the JAMS penal. Judgment on the award rendered by the
> arbitrator may be entered in any court in the City and County of New York.
> This Agreement shall be interpreted in accordance with New York law
> excluding conflict of law principles.

6.    A dispute between the parties thereafter arose in connection with Hensley's

purchase of donor sperm from MCB.

7.    On June 15, 2016, MCB filed a Demand for Arbitration pursuant to Paragraph

26 of the Agreement, seeking and adjudication that MCB had no liability in connection with

the donor sperm that MCB provided to Hensley.

8.    On October 21, 2016, Hensley filed an Amended Answer and Counterclaim

against MCB, asserting various claims on her behalf against MCB.

9.    On November 3, 2016, MCB filed a Notice of Affirmative Defenses to

Counterclaim.

10.    On December 8, 2016, Hensley filed an Amended Counterclaim against MCB.

11.    With the consent of the parties and pursuant to the Agreement and JAMS'

Commercial Arbitration Rules, JAMS appointed Marc E. Isserles as arbitrator (the

"Arbitrator").

12.     With the oversight of the Arbitrator, MCB and Hensley thereafter engaged in discovery.

13.     On March 6, 2018, the Arbitrator conducted an Arbitration Hearing in New York, New York. During the Hearing, the parties, through their respective attorneys, appeared before the Arbitrator and submitted their proofs, which included live sworn testimony and cross-examination of witnesses and documentary evidence.

14.     On April 17, 2018, Hensley submitted an additional claim against MCB, as "Next of Friend of            ."

15.     On July 6, 2018, after the parties submitted post-Hearing briefs, the Arbitrator held oral arguments via teleconference.

16.     On July 13, 2018, the parties made supplemental submissions, and, on July 15, 2018, the Arbitrator closed the Hearing.

17.     On August 8, 2018, the Arbitrator issued a Final Award. *See* Ex. A. In the Final Award, the Arbitrator ordered as follows:

> (a) Hensley is entitled to an award of $88,700 on her negligence and malpractice claims against MCB.
>
> (b)            negligence and malpractice claims against MCB is barred by Missouri law and therefore denied and dismissed;
>
> (c) Each party shall bear their own costs and attorneys' fees;
>
> (d) Each party shall bear its share of the Arbitrator's fees and administrative costs of JAMS incurred in connection with the matter;
>
> (e) This Final Award resolves, and is in full settlement of, all claims submitted to this Arbitration.

*See id.* at 13.

3

**FILED: NEW YORK COUNTY CLERK 03/19/2019 11:40 AM**                    INDEX NO. 651601/2019

NYSCEF DOC. NO. 1                                                                                    RECEIVED NYSCEF: 03/19/2019

18.    Less than one year has expired since the date of the delivery of the Final Award

by the Arbitrator to the parties.

19.    The Final Award has not been vacated or modified.  No application has been

made by either party for vacation or modification of the Final Award and no grounds exists

therefor.

WHEREFORE, Petitioner MCB requests an Order of this Court be issued confirming

the Final Award and entering judgment thereon.

Dated:   New York, New York
         March 18, 2019                          Joseph Tripodi
                                                 _____
                                                 JOSEPH TRIPODI

                                                 Kranjac Tripodi & Partners LLP
                                                 30 Wall Street, 12th floor
                                                 New York, New York 10005
                                                 (e) jtripodi@ktpllp.com
                                                 (t) (646) 216-2400
                                                 (f) (646) 216-2373
                                                 *Attorneys for Petitioner*
                                                 *Manhattan CryoBank, Inc.*

4

FILED: NEW YORK COUNTY CLERK 03/19/2019 11:40 AM

NYSCEF DOC. NO. 1

INDEX NO. 651601/2019

RECEIVED NYSCEF: 03/19/2019

## **VERIFICATION**

STATE OF NEW YORK )
                   ) ss:
COUNTY OF NEW YORK )

      Joseph Tripodi, being duly sworn, deposes and says:

1.     I am counsel for Manhattan CryoBank, Inc., the petitioner herein.

2.     I have read the foregoing petition and know the contents thereof. The petition is

true to my knowledge.

JOSEPH TRIPODI

Sworn to before me this
_____ day of March, 2019

Notary Public

FILED: NEW YORK COUNTY CLERK 03/19/2019 11:40 AM     INDEX NO. 651601/2019
NYSCEF DOC. NO. 1                                        RECEIVED NYSCEF: 03/19/2019

## VERIFICATION

STATE OF NEW YORK     )
                      ) ss:
COUNTY OF NEW YORK    )

     Joseph Tripodi, being duly sworn, deposes and says:

1.    I am counsel for Manhattan CryoBank, Inc., the petitioner herein.

2.    I have read the foregoing petition and know the contents thereof.  The petition is

true to my knowledge.

 

JOSEPH TRIPODI

Sworn to before me this
_18_ day of March, 2019

Notary Public

HECTOR M. NEGRON
NOTARY PUBLIC - STATE OF NEW YORK
NO. 01NE6073981
QUALIFIED IN NEW YORK COUNTY
COMMISSION EXPIRES 10/27/2022

FILED: NEW YORK COUNTY CLERK 03/19/2019 11:40 AM

NYSCEF DOC. NO. 2

INDEX NO. 651601/2019

RECEIVED NYSCEF: 03/19/2019

# EXHIBIT A

FILED: NEW YORK COUNTY CLERK 03/19/2019 11:40 AM
NYSCEF DOC. NO. 2

INDEX NO. 651601/2019
RECEIVED NYSCEF: 03/19/2019

JAMS NEW YORK

——————————————————— - X

MANHATTAN CRYOBANK, INC.,                          :

                    Claimant-                      :        JAMS Reference No.: 1425021494
                    Counter-Respondent             :

           v.                                      :

                                                   :

MEGAN HENSLEY, individually and as                 :
next friend of ███████  ████████                   :

                    Respondent-                    :
                    Counter-Claimant               :
——————————————————— X

The undersigned Arbitrator, having been appointed by the parties in accordance with
the Arbitration Agreement between the parties, hereby rules in this FINAL AWARD as follows:

### I.   The Parties and Their Counsel

Claimant-Counter-Respondent Manhattan CryoBank, Inc. ("MCB") was represented in
these proceedings by Joseph Tripodi, Kranjac Tripodi & Partners LLP, 30 Wall St, 12 Fl., New
York, NY 10005, and Timothy C. Sansone, Sandberg Phoenix & Von Gontard, P.C., 600
Washington Avenue, 15th Floor, St. Louis, Missouri 63101-1313. Respondent Counter-Claimant
Megan Hensley ("Hensley"), individually and as next friend of ███████, was represented in
these proceedings by Dean Gresham, Diana Milbourn, and Stuart Cochran, Steckler, Gresham,
Cochran PLLC, 12720 Hillcrest Rd., Suite 1045, Two Hillcrest Green, Dallas, TX 75230.

### II.   The Arbitration Agreement and the Governing Law

MCB and Hensley are parties to an Agreement for Purchase of Donor Sperm ("Arbitration
Agreement"), which the parties executed on January 26, 2015. The Arbitration Agreement
provides that its interpretation will be governed by New York law.[1] Pursuant to the Arbitration
Agreement, this Arbitration is governed by the JAMS Comprehensive Arbitration Rules &
Procedures, Effective July 1, 2014 (the "JAMS Rules"), https://www.jamsadr.com/rules-
comprehensive-arbitration.

### III.   Procedural Background

_____
[1] The parties appear to agree that the choice of law provision in the Arbitration Agreement does not resolve the
question of which state's law governs Hensley's tort claims against MCB. The Arbitrator will address the governing
substantive law below. The parties have stipulated that ███████ tort claims are governed by Missouri law.

1

FILED: NEW YORK COUNTY CLERK 03/19/2019 11:40 AM   INDEX NO. 651601/2019
NYSCEF DOC. NO. 2                                                          RECEIVED NYSCEF: 03/19/2019

This Arbitration commenced pursuant to a Demand for Arbitration, submitted by MCB on June 15, 2016. Hensley submitted a response and counterclaims on October 21, 2016, and MCB submitted a Notice of Affirmative Defenses to Counterclaim on November 3, 2016. On December 8, 2016, Hensley submitted amended counterclaims.

On December 15, 2016, the Arbitrator issued a Report of Preliminary Conference and Pre-Hearing Scheduling Order No. 1 ("Scheduling Order No. 1") which, among other things, set forth a discovery schedule. On March 6, 2017, the Arbitrator issued Scheduling Order No. 2 setting hearing dates for August 2017. On August 4, 2017, after the parties agreed to adjourn the Hearing, the Arbitrator issued Scheduling Order No. 3, setting new Hearing dates for November 8-9, 2017. The November Hearing was subsequently adjourned after the parties reached an agreement on liability.

On November 13, 2017, the parties submitted a Stipulation reflecting their agreement on liability. In the Stipulation, the parties agreed that: (1) MCB would not contest the "liability aspect" of Hensley's malpractice/negligence claim against MCB; (2) all other claims asserted by the parties, including Hensley's claims for punitive damages and counsel fees, were withdrawn with prejudice; (3) the Hearing on liability was no longer necessary; (4) the maximum amount of damages recoverable by Hensley would be capped at $3 million; and (5) Hensley could not seek an award of counsel fees against MCB. On November 14, 2017, the Arbitrator issued Scheduling Order No. 4, which set forth a discovery schedule for the damages phase of the Arbitration and set a new Hearing date for damages on March 6, 2018.

On February 19, 2018, Hensley made pre-Hearing submissions under JAMS Rule 20(a); MCB made its pre-Hearing submission under Jams Rule 20(a) on February 20, 2018. On February 27, 2018, the parties submitted brief position statements pursuant to JAMS Rule 20(b).

The Hearing in this Matter was held on March 6, 2018, in New York, NY, at the JAMS Resolution Center. The Hearing was transcribed. The Arbitrator heard live testimony from the following witnesses, all of whom testified under oath: Megan Hensley; Kristi Bagnell; and Tamar Fleischer.

On March 6, 2018, the Arbitrator issued a Post-Hearing Scheduling Order setting forth a briefing schedule for post-Hearing briefs. On April 9, 2018, the parties submitted a second Stipulation ("Stipulation No. 2"). In Stipulation No. 2, the parties agreed (among other things) that: (1) Hensley would be permitted to assert claims on behalf of her daughter,

("                    "), a minor, against MCB, and the claims (which would be deemed filed on the same

2

day as Hensley's direct claims) would be governed by Missouri law; (2) notwithstanding the above, MCB contested the "legal basis and merits" of ███████ claims; (3) the right to a jury trial on ███████ claims is waived; (4) any claim that ███████ may have for punitive damages or counsel fees is waived; (5) the damages sought on ███████ claims shall be limited to medical costs set forth in Hensley's Life Care Plan; (6) the maximum amount of all damages recoverable on Hensley's claims and ███████ claims, collectively, shall be capped at $3 million; (7) no award of counsel feels would be sought against MCB; (7) no additional claims would be asserted by Hensley or on behalf of ███████ against MCB; and (8) the parties continue to disagree on the substantive law governing Hensley's claims. The parties also agreed on an extension of the briefing schedule.

On April 17, 2018, pursuant to Stipulation No. 2, Hensley submitted a "preconception negligence" claim as Next Friend of ███████. After the parties submitted their post-Hearing briefs, on July 6, 2018, the parties and the Arbitrator held oral arguments via teleconference. On July 13, 2018, the parties made supplemental submissions at the request of the Arbitrator. On July 15, 2018 the Arbitrator closed the Hearing pursuant to JAMS Rule 22(h).

For the reasons set forth below, the Arbitrator finds, after due consideration of all the arguments and evidence presented, at the Hearing and in the post-Hearing submissions, that (1) ███████ claims are "wrongful life" claims that are barred under Missouri law; and (2) Hensley's claims are "wrongful birth" claims governed by New York law; and (3) under New York law, Hensley is entitled to an award of $88,700 representing the extraordinary costs of care associated with raising ███████ until the age of 21.

## IV. Background

The following is a statement of those facts found by the Arbitrator to be true and necessary to the Award. In finding the facts and reaching the conclusions set forth below, the Arbitrator has given full and careful consideration to all evidence of record and all arguments advanced by the parties at the hearing and in their post-hearing submissions. To the extent that this recitation differs from any party's position, that is the result of the Arbitrator's determinations as to credibility, relevance, burden of proof considerations, and the weighing of the evidence.

The facts at issue in this matter are straightforward and largely undisputed. On January 15, 2015, after reviewing various sperm donor profiles on MCB's website, Hensley and her partner, Kendan Elliot, purchased sperm from Donor 184 from MCB. MCB shipped sperm from Donor 184 to a clinic chosen by Hensley in St. Louis, Missouri, where she resides, and Hensley was

3

FILED: NEW YORK COUNTY CLERK 03/19/2019 11:40 AM
NYSCEF DOC. NO. 2

INDEX NO. 651601/2019
RECEIVED NYSCEF: 03/19/2019

thereafter inseminated. Prior to purchasing the donor sperm and entering into the agreement with MCB, MCB represented that it performed extensive genetic screening on its donors. On November 27, 2015, Hensley gave birth to _____. Shortly after birth, _____ was diagnosed with alpha thalassemia, a rare blood disorder. MCB had represented to Hensley that Donor 184 was not a carrier of the thalassemia trait. As a result, Hensley did not genetically test for thalassemia prior to insemination. However, Hensley was in fact a carrier of the thalassemia trait as well, and so _____ was born with alpha thalassemia. On May 27, 2016, Hensley sent an email to MCB stating her desire to pursue arbitration under the Agreement.

As noted above, MCB has stipulated liability on Hensley's claims of negligence and malpractice. As such, the Arbitrator sees no reason to recount Hensley's allegations concerning MCB's allegedly deficient testing procedures, unqualified medical and scientific personnel, improper laboratory practices, and negligent business practices. It is sufficient for these purposes that MCB has admitted, at least insofar as Hensley's claims are concerned, that it is liable for failing to identify Donor 184 as a carrier of the thalassemia trait.

Dr. Kristi Bagnell of Rehabilitation Professional Consultants ("RPC") prepared a Life Care Plan and Cost Analysis for _____ on behalf of Hensley. Dr. Bagnell testified that _____ inherited only one normal alpha globin gene and thus has deletional Hemoglobin H disease. _____ alpha thalassemia results in a lack of oxygen in the blood, which results in an increased risk of a host of medical conditions, including anemia, hepatosplenomegaly (enlargement of the liver), cholelithiasis, pregnancy complications, preeclampsia, congestive heart failure, growth delays during childhood, iron toxicity, decreased bone density, nutritional deficiencies, and pain syndrome. The iron overload or iron toxicity associated with alpha thalassemia causes damage to the heart, liver, and endocrine system and is the major cause of morbidity in patients with the disease. The only treatment for iron overload is chelation therapy. Dr. Bagnell testified that, in reasonable medical probability, _____ will require chelation therapy in her 40s, continuing for the rest of her life. Currently, a drug known as Deferasirox is used for chelation therapy.

Although chelation therapy requires coordinated and managed healthcare at a thalassemia center, Dr. Bagnell testified that, with proper care, _____ is expected to live a full life. Dr. Bagnell calculates that the reasonable and necessary future medical costs for _____ condition over the course of her life will be $3,397,519.28, with potential care needs of $238,035.91. The vast majority of those medical costs (approximately $2,476,906) are associated with chelation therapy, which _____ will not need, according to Dr. Bagnell, until her 40s.

4

FILED: NEW YORK COUNTY CLERK 03/19/2019 11:40 AM   INDEX NO. 651601/2019

NYSCEF DOC. NO. 2   RECEIVED NYSCEF: 03/19/2019

Tamar Fleischer of BalaCare Solutions prepared a life care plan for ▮▮▮▮ on behalf of MCB. Fleischer estimates a total cost of medical care of $3,223,600 for ▮▮▮▮ lifetime, which is quite similar to the costs estimated by Dr. Bagnell. Fleischer also calculated the medical costs for ▮▮▮ until the age of 21 and compared them with Dr. Bagnell's estimated costs for the same period. While Dr. Bagnell calculates costs of $88,700 for that period, Fleischer estimates those costs to be $41,000. Because ▮▮▮▮ is currently covered under her parent's health insurance policy, Fleischer also calculated the out-of-pocket costs for ▮▮▮▮ medical care under the current insurance policy. Fleischer estimates that the out-of-pocket costs until the age of 21 is $23,288. Using Dr. Bagnell's figure of $88,700 of medical costs until the age of 21, Fleischer estimates the out-of-pocket medical costs under RPC's analysis to be $46,666 for the same period.

The Arbitrator also heard testimony from Dr. Bagnell about the pain and suffering ▮▮▮▮ ▮▮▮ is likely to experience because of her condition, including mental anguish associated with physical pain, managing her condition, and concerns over potential complications from pregnancy. In addition, Hensley testified as to her own mental pain, suffering, and anguish stemming from giving birth to a child who will face a lifetime of hardship and challenges because of her medical condition.

Hensley testified that, if she had been informed by MCB that Donor 184 was a carrier of the thalassemia trait, she would not have selected Donor 184; would not have been inseminated with his sperm; and that therefore ▮▮▮▮ "would not have been born."

## V.   Analysis and Conclusions

### A.   ▮▮▮▮ Claims Are "Wrongful Life" Claims Barred by Missouri Law

As noted above, the parties have stipulated that ▮▮▮▮ malpractice and negligence claims are governed by Missouri law. Critically, however, and unlike the stipulation conceding liability on Hensley's claims, MCB made clear in Stipulation No. 2 that it would contest the validity and legal merits of any claim brought by Hensley on behalf of ▮▮▮▮.

MCB argues that ▮▮▮▮ tort claims in this matter are properly classified as "wrongful life" claims that are squarely barred by Missouri law. Hensley, on behalf of ▮▮▮▮ ▮▮▮, contends that ▮▮▮▮ claims are not "wrongful life" claims, but instead more properly classified as "preconception torts," which Missouri law both recognizes and affords the full panoply of traditional tort law remedies.

After considering the arguments in the post-Hearing briefs, the oral argument, and the

5

FILED: NEW YORK COUNTY CLERK 03/19/2019 11:40 AM
NYSCEF DOC. NO. 2

INDEX NO. 651601/2019
RECEIVED NYSCEF: 03/19/2019

governing case law, the Arbitrator hereby finds and concludes that           claims are
"wrongful life" claims that as unstainable as a matter of settled Missouri law. In *Wilson v. Kuenzi*,
751 S.W.2d 741, 743 (Mo. 1988), the Missouri Supreme Court held that, where the gravamen of
the plaintiff's claim is that, but for the asserted negligence of the defendant, the plaintiff would not
have been born, the claim is one for "wrongful life" that Missouri law does not recognize. *Id.*
(joining what it described as the "majority" of courts rejecting a wrongful life cause of action, and
pointing to the troubling practical and public policy implications of awarding damages on a legal
theory requiring a comparison of "impaired life" with "nonexistence"). Here, it is undisputed that,
but for the negligence of MCB, Hensley would not have purchased the sperm from Donor 184
from MCB. As a necessary, biological consequence of that position, were it not for MCB's
admitted negligence,           would never have been conceived or born.[2] As such,
     claims are "wrongful life" claims barred by Missouri law.

Hensley advances a number of arguments to resist this conclusion, none of which the
Arbitrator finds persuasive. First, Hensley argues that "wrongful life" claims must involve
negligence that occurs post-conception. Because           negligence and malpractice claims
involve preconception acts and omissions by MCB, Hensley contends that the claims are not
properly characterized as "wrongful life" claims. *See* Hensley Post-Hearing Br. at 18 ("Critically,
birth wrongful death and wrongful life claims require that the tort be committed *after
conception*."). Hensley's attempt to avoid the "wrongful life" doctrine on the basis of a purported
distinction between pre- and post-conception negligence fails. *Wilson* involved a post-conception
tort, but its reasoning and central holding necessarily apply to preconception torts as well. *Wilson*,
751 S.W.2d at 743 (describing prohibited "wrongful life" cause of action as one "brought solely by
or on behalf of the child who sues for damages stemming from the fact of his birth on the theory
that *were it not for the negligence of the defendant he or she would not have been born.*"
(emphasis added).[3] Numerous courts around the country have treated preconception torts as

---

[2] During oral argument, Hensley's counsel resisted this conclusion on the ground that, had Hensley chosen a different donor's sperm, a child named "           " still would have been born. Of course, that would be a different biological child with the same name. Hensley admits that the one and only child known as           , the offspring of Hensley and Donor 184, would not have been conceived or born had MCB acted non-negligently.

[3] Hensley asserts that *Wilson* described the "wrongful life" and "wrongful birth" causes of action as claims alleging "that it was negligence of the respondent doctor to fail to advise the appellant mother of the availability of the amniocentesis test, or to order such test, and to counsel her as to the results of the test so that she could make an informed decision as to whether or not to have an abortion." Hensley Post-Hearing Br. at 18 (quoting *Wilson*, 751 S.W.2d at 742). Hensley omits to mention that this portion of *Wilson* was merely describing the particular claims brought by the plaintiff in that case. The Court did not say, as Hensley misleadingly implies, that wrongful life claims

6

"wrongful life" (or "wrongful birth") claims where, as here, the claim depends upon the assertion that, but for the alleged negligence, the child never would have been born.[4] And Hensley fails to cite a single case recognizing such a distinction, let alone limiting the "wrongful life" category to claims involving post-conception negligence. Put simply, Hensley's effort to avoid Missouri's prohibition on "wrongful life" claims based on a distinction between pre- and post-conception negligence is flatly inconsistent with central reasoning behind that prohibition. *See Zelt v. Xytex Corp.*, 2018 WL 1014627 (N.D. Ga. September 9, 2018) (expressly rejecting argument that Georgia's well-settled prohibition on "wrongful birth" claims did not apply to negligence claim against a sperm bank because alleged negligence occurred preconception; explaining that courts' rejection of such claims does not depend on the "timing of the tort," but rather the underlying theory of the claim, *i.e.*, that no child would have been born but for the negligence).

Relatedly, Hensley argues that, because Missouri recognizes a legal duty owed to a plaintiff prior to conception, and thus allows "preconception" torts, *see, e.g., Lough v. Rolla Women's Clinic*, 866 S.W.2d 851 (Mo. 1993), it somehow follows that ▮▮▮▮▮ tort claims here may proceed. The Arbitrator disagrees. That *Lough* generally recognizes the validity of preconception tort claims says nothing about whether Missouri recognizes the narrower category of preconception tort claims premised on the theory that, but for the alleged negligence, the child never would have been born. *Lough* did not address such a claim, and indeed the Court in *Lough* expressly rejected the defendant's reliance on *Wilson* because the claim at issue there did not involve an asserted "right to have never been born." *Id.* at 855. *Wilson*, however, addresses that question, and squarely holds that, where a tort claim is premised on the assertion that, but for the negligence, the child never would have been born, there is no cause of action.

Hensley also argues that assisted reproduction technology ("ART") claims asserted against a sperm bank like MCB should be treated differently from more traditional negligence or

---

require that the negligence occur post-conception, or that the parent must have declined to pursue an abortion based on post-conception negligence. To the contrary, and as quoted above, the Court in *Wilson* focused on the underlying theory of the claim – namely that, but for the negligence, the child would not have been born. Because that is precisely the theory underlying ▮▮▮ tort claims, those claims are plainly "wrongful life" claims under *Wilson*. Finally, Hensley's argument that ▮▮▮ claims are not "wrongful life" claims because they do not involve abortion, and thus are not barred by Mo. Rev. Stat. §188.130, is misplaced since *Wilson* held that "wrongful life" and "wrongful birth" claims were barred by Missouri common law, and did not limit its holding to claims involving abortion.

[4] *See, e.g., B.F. v. Reprod. Med. Assoc. of New York, LLP*, 136 A.D.3d 73, 75, 22 N.Y.S.3d 190, 191 (N.Y. App. Div. 2015), *aff'd*, 30 N.Y.3d 608, 92 N.E.3d 766 (2017); *Donovan v. Idant Laboratories*, 625 F.Supp.2d 256, 271 (E.D. Pa. 2009), *aff'd sub nom. D.D. v. Idant Laboratories*, 374 Fed. Appx. 319 (3d Cir. 2010); *Turpin v. Sortini*, 31 Cal. 3d 220, 231, 239, 643 P.2d 954, 956, 966 (1982); *Beardsley v. Wierdsma*, 650 P.2d 288, 290 (Wyo. 1982).

malpractice claims asserted against doctors and other medical practitioners for failing to diagnose or identify health issues. The Arbitrator rejects this argument too. In the first place, numerous courts around the country have classified tort claims against sperm banks as "wrongful life" (or "wrongful birth") claims where, as here, the claim is premised on the assertion that the child never would have been conceived absent the defendant's negligence. *See supra* n.4. Although ART technology is relatively new, and the case law is relatively limited, courts confronting such claims have treated them just like more traditional tort claims premised on a "wrongful life" theory. Indeed, Hensley has failed to cite a single decision from *any* court holding that such a claim is not properly classified as a "wrongful life" claim.[5] In the final analysis, Hensley's argument that ART claims should be treated differently is nothing but a variation on the theme – which the Arbitrator has already rejected – that preconception tort claims are somehow exempted from the "wrongful life" doctrine.[6]

Finally, Hensley argues that it would be unjust to apply the "wrongful life" doctrine to deprive ▇▇▇▇▇ of any remedy for an admitted, egregious wrong. To the extent Hensley is

---

[5] In her Post-Hearing Sur-Reply Brief, Hensley cites two unpublished orders (*Rizzo v. Idant Labs, Inc.* (N.D. Ill.) and *Kretchmar v. New England Cryogenic Center* (District Court of Oklahoma County, Oklahoma)) from other jurisdictions in which courts have permitted similar claims to proceed in the face of a motion to dismiss. But neither decision applies Missouri law, and neither one explains the basis for the holding, nor attempts to reconcile the decision with the jurisdiction's wrongful life or wrongful birth case law. For these reasons, the Arbitrator cannot view these decisions as persuasive authority. Hensley also cites and quotes from cases applying the law of jurisdictions that, unlike Missouri, permit "wrongful life" or "wrongful birth" claims. *See, e.g., Doe I. v. Xytex Corp.*, 2017 WL 1113996, at *3) (N.D. Cal. Mar. 24, 2017) (citing and applying *Turpin v. Sortini*, 643 P.2d 954, 964 (1982), which recognizes wrongful life claims under California law). Such cases obviously do not help Hensley's argument under Missouri law, which bars such claims. Moreover, cases like *Doe I v. Xytex* underscore the point that courts uniformly treat such claims as "wrongful life" or "wrongful birth" claims even in the ART context. To the extent courts reach different results, it is because of the varying substantive rules governing such claims. It is *not* because courts classify the claims as something *other than* "wrongful birth" or "wrongful life" claims, as Hensley urges.

[6] In her Post-Hearing Sur-Reply Brief, Hensley argues that in ART tort cases, the defendant's negligence is more "active" because it is the direct cause of the child's injury or condition, whereas in the more typical "wrongful life" case the defendant's negligence tends to be more passive in nature (e.g., failing to diagnose a condition that already exists). There is something to this distinction, but not nearly enough. As an initial matter, it is not clear to the Arbitrator that a medical doctor who fails to identify a serious birth defect post-conception is any less "actively" negligent than one who fails to properly test a sperm sample preconception. Neither doctor has literally "caused" the disease, which is ultimately a product of biology and genetics. But in both instances, the challenged negligence ultimately leads to the birth of an unhealthy child who would not otherwise have been conceived or born. Even assuming an actor like MCB might be seen as more directly or actively involved in "creating" the child's condition (as opposed to failing to diagnose an existing condition prior to birth), this argument is simply a restatement of the proposition, which the Arbitrator has already rejected, that a preconception "wrongful life" claim somehow stands on firmer ground than a post-conception "wrongful life" claim. Both types of claims ultimately depend on the theory that, but for the asserted negligence, the child would not have been born. And Hensley has failed to cite any case law, in the ART or any other context, holding that such a claim should be treated as something other than a wrongful life (or wrongful birth) claim.

advancing a criticism of the "wrongful life" doctrine, the Arbitrator is sympathetic to the argument. It is not clear to the Arbitrator, for example, that the damages and causation complexities implicated by a "wrongful life" claim necessarily requires, or even supports, a rule of law under which no remedy is available. But Missouri has concluded otherwise, and it is not for the Arbitrator to second-guess that determination. Missouri has plainly determined that, where a negligence claim is premised on the assertion that, but for the negligence, the child never would have been born, there is no cause of action, and thus no legal remedy available to the child to compensate for that wrong. That is undoubtedly a harsh result. But it is equally harsh in every case implicating the wrongful life doctrine – many of which involve claims of egregious wrongdoing resulting in serious birth defects. Because Missouri law provides no remedy in these circumstances, the Arbitrator has no choice but to deny and dismiss the negligence and malpractice claims brought on behalf of ▓▓▓▓▓.

**B. Hensley is Entitled to Recover for Her Malpractice and Negligence Claims**

As noted above, MCB has conceded liability with respect to Hensley's negligence and malpractice claims against MCB. The two questions remaining for the Arbitrator to decide are: (1) which law governs Hensley's claims, and (2) what damages Hensley may recover under that governing law.

**1. Hensley's "Wrongful Birth" Claims Are Governed by New York Law**

Hensley argues that her tort claims are governed by Missouri law because she is a resident of Missouri; was in Missouri when she selected Donor 184's sperm and signed the agreement with MCB; and was inseminated with Donor 184's sperm in Missouri. MCB, on the other hand, argues that New York law should apply because New York, the state where MBC operates its business, and which regulates MCB's business practices, has a greater interest in the dispute.[7]

Under both New York and Missouri law, Hensley's tort claims are regarded as "wrongful birth" claims – a claim that is similar in structure to a claim for "wrongful life" (*i.e.*, but for the negligence, the child never would have been born), but which is asserted by the parents in their own right, rather than on behalf of the child. *See Wilson*, 751 S.W.2d at 743; *B.F. Reproductive Medicine Assoc. of N.Y.*, 136 A.D.3d 73 (1st Dep't 2015). Hensley resists the characterization of

---

[7] MCB initially took the position that New York law applies because the Arbitration Agreement provides for the application of New York law. However, MCB appears to have abandoned that argument after Hensley rightly argued that the clause is narrowly drafted, and thus does not extend to tort claims. *See, e.g., J.A.O. Acq. Corp. v. Stavitsky*, 745 N.Y.S.2d 634, 638 (N.Y. Sup. Ct. 2001), *aff'd*, 739 N.Y.S.2d 821 (1st Dep't 2002). The Arbitrator therefore does not rely on the contractual choice of law provision in reaching the conclusion that New York law applies.

her claims as "wrongful birth" claims for all the same reasons she resists characterization of ▮▮▮▮
▮▮▮▮ claims as "wrongful life" claims. And for all the same reasons discussed above, the
Arbitrator rejects these arguments and finds and concludes that Hensley's claims are properly
treated as "wrongful birth" claims.[8] Indeed, under New York law, the courts have made expressly
clear that the "wrongful birth" construct applies to a claim, like Hensley's, involving preconception
negligence. *See, e.g., B.F.,* 136 A.D.3d at 77.[9]

There is a clear conflict between New York and Missouri law on the viability and/or scope
of Hensley's "wrongful birth" claims. Although New York law bars all recovery for "wrongful
life" claims, it permits "wrongful birth" claims. Recovery on such a claim, however, is limited to
the extraordinary costs of care until the child reaches the age of majority. No damages are
available for the costs of care after the child reaches the age of majority, nor is any recovery
available for the parents' emotional distress. *B.F. Reproductive Medicine Assoc. of N Y.,* 136
A.D.3d 73 (1st Dep't 2015); *Becker v. Schwartz,* 46 N.Y.2d 401 (1978); *Bani-Esrali v. Lerman,* 69
N.Y.2d 807, 808 (1987). Under Missouri law, however, Hensley's "wrongful birth" claims are,
just like ▮▮▮▮▮ "wrongful life" claims, squarely prohibited by *Wilson.*[10]

---

[8] Hensley advances the additional argument that treating her claims as "wrongful birth" claims would be inconsistent
with MCB's stipulation admitting liability on those claims. But MCB's argument is consistent with that stipulation
insofar as New York law applies to the claim, since New York law recognizes a "wrongful birth" cause of action but
limits the available recovery. MCB would be deviating from the stipulation if, for example, it were to argue that
Hensley's claim is governed by Missouri law, and therefore barred altogether. But no doubt because of the stipulation,
MCB is not taking that position. It is Hensley who insists that Missouri law applies – notwithstanding that Missouri
law arguably bars her claim as a matter of law, whereas New York provides a cause of action and a remedy (albeit a
limited one).

[9] Despite Hensley's effort to cast *B.F.* as a decision that applies only in circumstances involving a lost opportunity to
terminate a pregnancy, *See* Hensley Post-Hearing Reply at 5, the very language from *B.F.* that Hensley quotes makes
expressly clear that the wrongful birth construct equally applies to a claim, as here, that the "child would not have been
*conceived* but for the defendant's negligence." *Id.* (emphasis added). Hensley also argues that her claims may
properly be classified as "wrongful conception" claims, like the claims at issue in *Girdley v. Coats,* 825 S.W.2d 295
(Mo. 1992). But as MCB persuasively argues, "wrongful conception" is a very different type of claim brought by the
parents of a *healthy* child born as a result of a negligent sterilization procedure. Such claims implicate entirely
different concerns from claims, like Hensley's, that depend on the theory that, but for the defendant's negligence, a
child with birth defects or similar health conditions would not otherwise have been born.

[10] In *Shelton v. St. Anthony's Med. Ctr.,* 781 S.W.2d 48 (Mo. 1989), the Missouri Supreme Court appeared to create an
exception from *Wilson's* broad rejection of "wrongful birth" claims – at least where the parent articulates a distinct
claim of emotional distress. *Shelton,* however, simply denied a motion to dismiss. The Court did not explain what
circumstances would permit a recovery of emotional distress damages, or the nature or quantum of proof necessary for
recovery. However, the Arbitrator need not resolve these complexities given that, as explained below, New York has a
far greater interest in this controversy. It is worth noting, however, that even if Missouri law governed her claims,
Hensley would not be permitted to recover *any* of the $3,397,519.28 in damages that she seeks to recover for the cost
of medical care during the course of ▮▮▮▮▮ lifetime, as the recovery of such medical costs are squarely barred
by *Wilson.*

FILED: NEW YORK COUNTY CLERK 03/19/2019 11:40 AM          INDEX NO. 651601/2019
NYSCEF DOC. NO. 2                                        RECEIVED NYSCEF: 03/19/2019

The Arbitrator concludes that under New York's governing conflict of law principles, New York law should apply to Hensley's claims. It is true, as Hensley urges, that the claims at issue here are "conduct regulating" torts, which makes the place of injury highly relevant to the analysis. *See Schultz v. Boy Scouts of Am.*, 65 N.Y.2d 189, 201 (1985); *GlobalNet Financial.Com Inc. v. Frank Crystal & Co*, 449 F.3d 377, 385 (2d Cir. 2006). But Hensley is simply mistaken in contending that New York conflict of laws jurisprudence rigidly requires application of the law of the place of injury. To the contrary, New York's conflict of laws analysis is a "flexible" one, *Cooney v. Osgood Mach., Inc.*, 81 N.Y.2d 519, 521 (1994), and the overriding goal is identifying which state has the greatest interest in the dispute. *See MasterCard International Inc. v. Nike, Inc.*, 164 F. Supp. 3d 592, 605-06 (S.D.N.Y. 2016) (noting general presumption that situs of the tort governs where negligent act occurs in one jurisdiction and plaintiff's injuries are suffered in another, but that such presumption ultimately gives way to the law of state with the greatest interest in the controversy).

Here, Missouri's interest in this dispute is certainly implicated because Hensley is a Missouri resident, and she was in Missouri when she was inseminated with the sperm from Donor 184 that MCB sold to her. Moreover, Hensley is correct that MCB's review of the genetic testing at issue here did not even take place in New York – it was performed by MCB's medical director in California. At the same time, while the sperm test results were reviewed in California, the sperm was actually tested in New York, and ultimately shipped from MCB to Missouri. More importantly, Hensley's tort claims are not limited to the medical director's review in California. To the contrary, Hensley's negligence and malpractice claims broadly attack MCB's policies and procedures, including testing protocols, training of personnel, laboratory practices, and business practices – all of which implicate the operation and management of a New York sperm bank regulated by New York law.

As between Missouri, whose interests in the controversy are implicated because Hensley resides and was inseminated there, and New York, which has a direct and concrete interest in regulating the conduct of sperm banks like MCB when they advertise, genetically test, and sell sperm nationwide, the Arbitrator concludes that New York has the greater interest in the matter, and that New York law therefore should apply. *See, e.g., Holborn Corp. v. Sawgrass Mut. Ins. Co.*, 304 F. Supp. 3d 392, 399-402 (S.D.N.Y. 2018) (applying New York law to claims that insurance broker negligently provided advice when making sales to Florida residents, where insurance broker was licensed in New York, New York was the principal place of business, and

11

FILED: NEW YORK COUNTY CLERK 03/19/2019 11:40 AM
NYSCEF DOC. NO. 2

INDEX NO. 651601/2019
RECEIVED NYSCEF: 03/19/2019

"center" of alleged negligent acts and omissions was New York, notwithstanding fact that alleged injury occurred in Florida where plaintiff was domiciled and purchased insurance).

> 2. Under New York law, Hensley is Entitled to an Award of the Extraordinary Costs of Care Until ▇▇▇▇▇ Age of Majority

Under New York law, Hensley's claims are "wrongful birth" claims. *B.F.*, 136 A.D.3d 73. As explained, New York law permits a cause of action for wrongful birth but limits the recovery to the extraordinary costs of medical care until the age of majority. *Id.* The Arbitrator finds credible and persuasive the conclusion of Hensley's expert, Dr. Bagnell, that these costs amount to $88,700. Nor has MCB made a persuasive showing as to why Fleischer's somewhat lower calculation of $41,000 is more appropriate. However, as explained above, the additional damages that Hensley seeks to collect – most notably, medical care and expenses that ▇▇▇▇▇ will incur post-majority, as well as Hensley's emotional distress – are not recoverable under a "wrongful birth" claim governed by New York law.[11]

The Arbitrator rejects MCB's argument that these figures should be further reduced to account for health insurance coverage that would pay for all costs aside from "out of pocket" expenses. MCB argues that, under New York law, evidence of health insurance coverage is admissible to offset tort damages notwithstanding the "collateral source" rule. N.Y. C.P.L.R. § 4545.[12] But MCB has the burden of demonstrating with "reasonable certainty" that Hensley is "legally entitled to the continued receipt of such collateral source, pursuant to a contract or otherwise enforceable agreement, subject only to the continued payment of a premium and such other financial obligations as may be required by such agreement." *Id*; *see also Kihl v. Pfeffer*, 47 A.D.3d 154, 163 (2d Dep't 2007) (§4545 must be strictly construed). The testimony advanced at the Hearing makes clear that Hensley's right to receive health insurance for ▇▇▇▇▇ is far from reasonably certain, and depends on a host of factors including, as for many Americans, obtaining employment that provides for insurance (which Hensley currently does not have) or having such

---

[11] Hensley does not dispute this limitation on damages for "wrongful birth" claims under New York law. Instead, Hensley argues that MCB cannot hope to limit damages to that modest recovery because of ▇▇▇▇▇ separate claim under Missouri law. *See* Hensley Post-Hearing Br. at 31-32. But as discussed above, ▇▇▇▇▇ separate claim is barred under Missouri law, and thus no additional recovery is therefore permissible.

[12] The parties further dispute which jurisdiction's collateral source doctrine applies here. Because the Arbitrator concludes that New York has the greatest interest in this controversy and that New York law governs the claim, it follows that New York's substantive damages rules, including its collateral source rules, also should apply. *See Stanley v. Bertram-Trojan, Inc.*, 868 F. Supp. 541, 544 n.1 (S.D.N.Y. 1994). However, the Arbitrator would reach the same conclusion under Missouri law, which bars consideration of collateral source payments. Mo. Ann. Stat. § 490.715

coverage available through existing insurance marketplaces created by the Affordable Care Act (whose future in the current political climate is also far from reasonably certain). The Arbitrator hereby finds and concludes that MCB has failed to make the showing required by §4545 and that Hensley's recovery of $88,700 should not be reduced to account for existing (but ultimately uncertain) health insurance coverage for          medical condition.

\* \* \* \* \*

All other arguments or claims by the parties have been considered and rejected by the Arbitrator.

### RELIEF AWARDED

I, THE UNDERSIGNED ARBITRATOR, having been duly sworn, having heard the proof, and having given full and fair consideration to the evidence submitted and all factual and legal arguments presented, do hereby order the following relief:

1. Hensley is entitled to an award of $88,700 on her negligence and malpractice claims against MCB;
2.          negligence and malpractice claims against MCB are barred by Missouri law and therefore denied and dismissed;
3. Each party shall bear its own costs and attorneys' fees;
4. Each party shall pay its share of the Arbitrator's fees and administrative costs of JAMS incurred in connection with this matter;
5. This Final Award resolves, and is in full settlement of, all claims submitted to this Arbitration.

MARC E. ISSERLES
Arbitrator

August 8, 2018
Date

13

FILED: NEW YORK COUNTY CLERK 03/19/2019 11:40 AM

NYSCEF DOC. NO. 2

INDEX NO. 651601/2019

RECEIVED NYSCEF: 03/19/2019

## PROOF OF SERVICE BY EMAIL & U.S. MAIL

Re: Manhattan CryoBank, Inc. vs. Hensley, Megan
Reference No. 1425021494

I, Annie Goodwin, not a party to the within action, hereby declare that on August 8, 2018, I served

the attached Final Award on the parties in the within action by Email and by depositing true copies thereof

enclosed in sealed envelopes with postage thereon fully prepaid, in the United States Mail, at New York, NEW

YORK, addressed as follows:

Joseph Tripodi Esq.
Kranjac Tripodi & Partners LLP
30 Wall Street
New York, NY 10005
Phone: 646-216-2400
jtripodi@ktpllp.com
    Parties Represented:
    Manhattan CryoBank, Inc.

Dean Gresham P.C.
Stuart L. Cochran Esq.
Steckler Gresham Cochran PLLC
12720 Hillcrest Rd.
Suite 1045
Dallas, TX  75230
Phone: 972-337-4040
dean@stecklerlaw.com
stuart@stecklerlaw.com
    Parties Represented:
    Megan Hensley

Timothy C. Sansone Esq.
Sandberg Phoenix & von Gontard PC
600 Washington Ave.
15th Floor
Saint Louis, MO  63101
Phone: 800-225-5529
tsansone@sandbergphoenix.com
    Parties Represented:
    Manhattan CryoBank, Inc.

I declare under penalty of perjury the foregoing to be true and correct. Executed at New York, NEW

YORK on August 8, 2018.

Annie Goodwin
agoodwin@jamsadr.com

**FILED: NEW YORK COUNTY CLERK 03/19/2019 11:40 AM**       INDEX NO. 651601/2019
NYSCEF DOC. NO. 3                                                 RECEIVED NYSCEF: 03/19/2019

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------------------------------------X

MANHATTAN CRYOBANK, INC.,

                    Petitioner,

For an Order Pursuant to Article 75 of
CPLR Confirming Arbitration Award

                  -against-

MEGAN HENSLEY, individually and as next of
Friend of                            ,

                Respondent.

----------------------------------------------------------------------X

Index No._____

**NOTICE OF PETITION**

**PLEASE TAKE NOTICE**, that upon the annexed Verified Petition to Confirm Arbitration Award, dated and sworn on March 18, 2019, Petitioner Manhattan CryoBank, Inc., will move this Court, in the Courthouse located at 60 Centre Street at the Clerk's Motion Calendar Call, Room 130, New York, New York 10007 on April 26, 2019, at 9:30 a.m., or as soon thereafter as counsel can be heard, for an Order pursuant to CPLR §§ 7510 and 7514, confirming and entering judgment on the Final Award entered in the arbitration captioned *Manhattan Cryobank, Inc. v. Megan Hensley, individually and as a next friend of*            , JAMS Reference No. 1425021494.

**FILED: NEW YORK COUNTY CLERK 03/19/2019 11:40 AM**                  INDEX NO. 651601/2019
NYSCEF DOC. NO. 3                                                                    RECEIVED NYSCEF: 03/19/2019

**PLEASE TAKE FURTHER NOTICE** that pursuant to CPLR § 403(b), an answer

and supporting affidavits, if any, shall be served at least seven days before the return date of

this petition.

Dated:   New York, New York
         March 19, 2019                          *Joseph Tripodi*

                                                 JOSEPH TRIPODI

                                                 Kranjac Tripodi & Partners LLP
                                                 30 Wall Street, 12th floor
                                                 New York, New York 10005
                                                 (e) jtripodi@ktpllp.com
                                                 (t) (646) 216-2400
                                                 (f) (646) 216-2373
                                                 *Attorneys for Petitioner*
                                                 *Manhattan CryoBank, Inc.*

To:      Megan Hensley
         2644 Arsenal Street
         St. Louis, MO 63118