UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------

MANHATTAN CRYOBANK, INC.,

                      Petitioner,

       -against-

MEGAN HENSLEY, individually and as next of friend of S.J.E., a minor,

                      Respondent.

**ORDER**

19 Civ. 3370 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        Respondent Megan Hensley brought an arbitration proceeding against Petitioner Manhattan Cryobank Inc. on behalf of herself and her minor child S.J.E. Petitioner now seeks to confirm the arbitrator's award (the "Award"). Respondent contends that the portion of the Award pertaining to S.J.E.'s claims should be vacated. For the reasons stated below, this Court will grant in part and deny in part Petitioner's petition to confirm the Award.

## BACKGROUND

        Petitioner Manhattan Cryobank Inc. is a sperm bank based in New York. (Cmplt. (Dkt. No. 1-1) ¶ 2) On January 26, 2015, Respondent Hensley – who resides in Missouri – and her partner purchased sperm from Petitioner. (Id. ¶¶ 3-4) In the purchase agreement (the "Agreement"), Petitioner and Respondent agreed to arbitrate "[a]ll claims or disputes between or among the parties relating in any way to the Agreement. . . ." (Id. ¶ 5) Petitioner shipped the sperm Respondent had purchased to a clinic in St. Louis, where Respondent was inseminated. (Award (Dkt. No. 1-1), Ex. A at 11-12)[1]

---

[1] All references to page numbers in this Order are as reflected in this District's Electronic Case Filing system.

On November 27, 2015, Respondent's child S.J.E. was born with alpha thalassemia, a rare blood disorder.  (Id. at 12)  Prior to insemination, Petitioner represented to Respondent that it had performed extensive genetic screening on its donors, and that the donor who had provided the sperm purchased by Respondent did not carry the thalassemia trait.  Based on this representation, Respondent chose not to be genetically tested for this trait.  It turned out, however, that both Respondent and the sperm donor are carriers of the thalassemia trait.  Because both biological parents are carriers of the trait, S.J.E. was born with alpha thalassemia.  (Id.)

On May 27, 2016, Respondent sent an email to Petitioner stating that she wished to pursue a claim against Petitioner through arbitration (id.), and on June 15, 2016, she filed a demand for arbitration.  (Cmplt. (Dkt. No. 1-1) ¶ 7)  The parties agreed to the appointment of a JAMS arbitrator and engaged in discovery.  (Id. ¶¶ 11-12)  On March 6, 2018, the Arbitrator conducted a hearing in New York.  (Id. ¶ 13)  On April 17, 2018, Defendant submitted an additional claim as next friend of S.J.E.  (Id. ¶ 14)  The parties made additional submissions, and on August 8, 2018, the arbitrator issued the Award.  (Id. ¶¶ 15-17)  While the Award grants Respondent $88,700 on her negligence and malpractice claims against Petitioner, the arbitrator rejected S.J.E.'s negligence and malpractice claims as barred by Missouri law.  (Id. ¶ 17)

On March 19, 2019, the Complaint was filed in Supreme Court of the State of New York, New York County.  (Id.)  On April 16, 2019, Respondent removed the case to this District pursuant to 28 U.S.C. § 1446(a), based on this Court's diversity jurisdiction under 28 U.S.C. § 1332(a).  (Not. of Removal (Dkt. No. 1))

On September 18, 2019, Petitioner filed the instant motion to confirm the Award.  (Dkt. No. 12)

**DISCUSSION**

I. **LEGAL STANDARDS**

   A. **Review of Arbitration Awards**

"Following issuance of an arbitration award, § 9 of the Federal Arbitration Act ('FAA') provides that a party may apply to a district court 'for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in [S]ections 10 and 11 of this title.'" STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC, 648 F.3d 68, 74 (2d Cir. 2011) (quoting 9 U.S.C. § 9). "Arbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." Folkways Music Publishers v. Weiss, 989 F.2d 108, 111 (2d Cir. 1993).

The Second Circuit has explained that,

> [n]ormally, confirmation of an arbitration award is "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court," Florasynth, Inc. v. Pickholz, 750 F.2d 171, 176 (2d Cir. 1984), and the court "must grant" the award "unless the award is vacated, modified, or corrected." 9 U.S.C. § 9. The arbitrator's rationale for an award need not be explained, and the award should be confirmed "'if a ground for the arbitrator's decision can be inferred from the facts of the case,'" Barbier v. Shearson Lehman Hutton, Inc., 948 F.2d 117, 121 (2d Cir. 1991) (quoting Sobel v. Hertz, Warner & Co., 469 F.2d 1211, 1216 (2d Cir. 1972)). Only "a barely colorable justification for the outcome reached" by the arbitrators is necessary to confirm the award. Landy Michaels Realty Corp. v. Local 32B-32J, Service Employees Int'l Union, 954 F.2d 794, 797 (2d Cir. 1992). A party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high. Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp., 103 F.3d 9, 12 (2d Cir. 1997).

D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006).

Under Section 10 of the FAA, an arbitration award may be vacated where:

(1) . . . the award was procured by corruption, fraud, or undue means;

3

> (2) . . . there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) . . . the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) . . . the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

### B. Application of State Law Affecting Arbitration Awards

The Federal Arbitration Act provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.

"[C]ourts must place arbitration agreements on an equal footing with other contracts . . . and enforce them according to their terms. . . . The final phrase of § 2, however, . . . permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011) (quoting Doctor's Associates, Inc. v. Casarotto, 517 U.S. 681, 687 (1996)).  "Although § 2's saving clause preserves generally applicable contract defenses, nothing in it suggests an intent to preserve state-law rules that stand as an obstacle to the accomplishment of the FAA's objectives." Id. at 343.

"Conflict preemption arises where compliance with both state and federal law is impossible, or where the state law stands as an obstacle to the accomplishment and execution of

4

the full purposes and objectives of Congress." Coalition for Competitive Elec., Dynergy, Inc. v. Zibelman, 906 F.3d 41, 49 (2d Cir. 2018) (internal quotation marks and citation omitted). "[T]he party asserting that federal law preempts state law bears the burden of establishing preemption." In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig., 725 F.3d 65, 96 (2d Cir. 2013). "'[F]ederal law does not preempt state law under obstacle preemption analysis unless 'the repugnance or conflict is so direct and positive that the two acts cannot be reconciled or consistently stand together.'" Id. at 102 (quoting Madeira v. Affordable Hous. Found., Inc., 469 F.3d 219, 241 (2d Cir. 2006)).

## II.  ANALYSIS

N.Y. C.P.L.R. § 1209 was enacted in 1962 and provides that "[a] controversy involving an infant, person judicially declared to be incompetent or conservatee shall not be submitted to arbitration except pursuant to a court order made upon application of the representative of such infant, incompetent or conservatee. . . ." N.Y. C.P.L.R. § 1209 (McKinney). Here, the parties agree that the procedural requirements of Section 1209 were not honored. See Pet. Br. (Dkt. No. 12) at 5; Resp. Opp. Br. (Dkt. No. 14) at 8. The parties further agree that, unless Section 1209 is preempted by the FAA, that part of the Award addressing S.J.E.'s claims must be vacated, because the Arbitrator exceeded his powers in issuing that portion of the Award. 9 U.S.C. § 10(a).

Petitioner argues that Section 1209 is preempted by the FAA, because it "stands as an obstacle to the accomplishment of the FAA's principal purpose of enforcing arbitration agreements according to their terms," and "attempts to impose a restriction upon arbitration inconsistent with the FAA's saving clause." (Pet. Br. (Dkt. No. 12) at 7)

Respondent counters that "Section 1209 is wholly consistent with the plain language of the FAA and has been consistently applied since the enactment of the FAA." According to Respondent, CPLR § 1209 "accomplishes the purpose of the FAA by allowing for, albeit with a court order, the arbitration of the claims of minors and incompetents. Without such an order, those claims would not otherwise be arbitrable." (Resp. Opp. Br. (Dkt. No. 14) at 13 (emphasis in original))

While Petitioner is correct that Section 1209 imposes an additional requirement for arbitrating the claims of infants and incompetents, Respondent is correct that Section 1209 addresses the "generally applicable contract defenses" of infancy and incompetency, and so would appear to fall within the saving clause of Section 2 of the FAA. Doctor's Associates, Inc., 517 U.S. at 687; see also 5 Williston on Contracts § 9:1 (4th ed.) ("the capacity of any person to contract is presumed unless he or she falls within one of the classes of persons who are held by the law to have no capacity . . . , [which] include natural persons under guardianship, infants, mentally ill . . . persons, or intoxicated persons.").

As Concepcion makes clear, however, this Court must go on to determine whether Section 1209's exceptions for infancy and incompetency "apply only to arbitration or . . . derive their meaning from the fact that an agreement to arbitrate is at issue." Concepcion, 563 U.S. at 339. Stated another way, this Court must determine whether Section 1209 leaves agreements to arbitrate with infants and incompetent individuals "on equal footing" with other contracts, or instead "stand[s] as an obstacle to the accomplishment of the FAA's objectives." Id. at 339, 343.

In this regard, Petitioner argues that, under Concepcion, "state law cannot create a special rule hindering arbitration based solely on the uniqueness of an arbitration agreement." (Pet. Reply Br. (Dkt. No. 13) at 5) In Concepcion, the Supreme Court addressed a California

Supreme Court ruling that class action waivers in arbitration agreements are unconscionable. Concepcion, 563 U.S. at 340. The Supreme Court held that "[r]equiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." Id. at 344. The Court's holding was based on detailed findings that, "as a structural matter . . . class arbitration, to the extent it is manufactured by [a judicial rule] rather than consensual, is inconsistent with the FAA." Id. at 347-48. The Supreme Court further found that "California's courts have been more likely to hold contracts to arbitrate unconscionable than other contracts." Id. at 342.

Unlike the judge-made rule at issue in Concepcion, Section 1209 does not appear aimed at a circumstance unique to arbitration. Instead, Section 1209 appears aimed at the capacity of the party agreeing to arbitrate, whether an infant or an incompetent. Moreover, New York law contains other provisions addressing the capacity of infants and incompetents. For example, N.Y. C.P.L.R. § 1207 requires that "if [an] action involves an infant, a judicially-declared incompetent, or a conservatee, the settlement of the action, including the amount of the attorney's fee, must be approved by the court. . . . This requirement arises from the court's duty to protect infants and other wards of the court." White v. DaimlerChrysler Corp., 57 A.D.3d 531, 533 (2d Dep't 2008). Understood in context, Section 1209 is not aimed at discouraging arbitration any more than Section 1207 is aimed at discouraging settlements; instead, both provisions serve New York's interest in protecting the rights of infants, incompetents, and "other wards of the court."[2]

---

[2] Petitioner argues that in Cutway v. S.T.A.R. Programs, Inc., 75 A.D.3d 811 (3d Dep't 2010), the court "held that parents could not avoid arbitration of their children's claims. The court reasoned that 'C.P.L.R. 1209 should not be construed as essentially permitting plaintiffs to circumvent the arbitration provisions. . . .'" (Pet. Br. (Dkt. No. 12) at 9 (quoting Cutway, 75 A.D.3d at 813)) The complete discussion in Cutway involves a quite different analysis,

7

The Court concludes that the mere fact that Section 1209 solely addresses the arbitration of claims involving infants and incompetents does not render it preempted under Concepcion. Instead, this Court must consider whether Section 1209 actually conflicts with the FAA.

In arguing that Section 1209 does not conflict with the FAA, Respondent relies on Frank Fiore Enters., Inc. v. Francis, No. 86 CIV. 7241 (WCC), 1987 WL 9429 (S.D.N.Y. Apr. 8, 1987). In that decision – which appears to be the only federal decision addressing Section 1209 – the court concluded that Section 1209 does not conflict with the FAA. (Resp. Opp. Br. (Dkt. No. 14) at 18-21) Petitioner argues that Frank Fiore "is not binding precedent" and "is not persuasive in light of the Supreme Court's recent precedents showing its strong preference to enforce arbitration provisions. . . ." (Pet. Reply Br. (Dkt. No. 13) at 9)

In Frank Fiore, the court squarely addressed the precise issue before this Court: whether the FAA preempts Section 1209. Frank Fiore, 1987 WL 9429, at *4. Judge Conner found that Section 1209 "enforces the restrictions imposed on arbitration by the saving clause of Section 2 of the [FAA]." Id. at *5. After noting that "incompetency is a generally recognized defense to the enforcement of any contract," the court found that Section 1209 "ensures that an incompetent party to an arbitration agreement is not bound by an obligation which in any other

---

however: "Under the circumstances of these cases, [Section] 1209 should not be construed as essentially permitting plaintiffs to circumvent the arbitration provisions (signed as part of agreements to benefit their children) by their current refusal to apply to the court to permit resolution of their children's disputes in the forum where they had agreed to have those claims resolved. . . . In the event that plaintiffs continue to refuse to make a [Section] 1209 application, it does not mean that the children's claims must necessarily languish." Cutway, 75 A.D.3d at 813.

In sum, Cutway is not on point, because there is no evidence that Respondent refused to submit a Section 1209 application. Instead, it appears that neither side considered the application of Section 1209 prior to proceeding with the arbitration of the infant's claims.

contractual context would be revocable at law or in equity." Id.  Judge Conner concluded that Section 1209

> enforces arbitration agreements that were unenforceable at common law, and assists disabled parties in asserting general contract defenses available at law or in equity by requiring judicially informed supervision prior to arbitration of the adequacy of representation afforded incapacitated parties.  The statute therefore accords with the Congressional national policy favoring arbitration in both purpose and effect, and is provided for and incorporated into Section 2 of the Federal Act.

Id. at *6.

This Court's finds Judge Conner's analysis persuasive.  As an initial matter, it is clearly correct that any contract involving a party who is an infant or incompetent is generally voidable.  See I.C. ex rel. Solovsky v. Delta Galil USA, 135 F. Supp. 3d 196, 208 (S.D.N.Y. 2015) ("It is well established under New York law that '[a]n infant's contract is voidable and the infant has an absolute right to disaffirm.'") (quoting Scott Eden Mgmt. v. Kavovit, 149 Misc. 2d 262 (N.Y. Cty. Sup. Ct. 1990)).  By requiring a court order before the arbitration of an infant's or incompetent's claim, Section 1209 creates certainty as to the enforceability of parties' agreement to arbitrate.  It thus furthers, rather than undermines, the national policy in favor of arbitration.

Petitioner's arguments to the contrary are not persuasive.  Petitioner contends that Section 1209 "'imposes an additional requirement to arbitration'" and that it therefore "create[s] obstacles to arbitration sufficient to force federal conflict preemption."  (Pet. Reply Br. (Dkt. No. 13) at 10 (quoting Frank Fiore, 1987 WL 9429, at *6))  But as discussed above, the fact that a statute imposes an additional requirement is not dispositive of whether the statute "stand[s] as an obstacle to the accomplishment of the FAA's objectives." Concepcion, 563 U.S. at 343. Instead, as Judge Conner found, Section 1209 furthers the FAA's objectives by ensuring that generally applicable contract defenses are dispensed with ex ante, putting the agreement to arbitrate on firm footing.  While a contract with an infant or incompetent is generally voidable –

9

whether a contract to supply goods, a loan, or an agreement to arbitrate, see Solovsky, 135 F. Supp. 3d at 208 – Section 1209 offers parties a means to ensure that an arbitrator's award will be enforceable, notwithstanding the generally applicable defenses of infancy or incompetency.

The Supreme Court's post-Concepcion decisions regarding the FAA's saving clause are not to the contrary. For example, in Kindred Nursing Centers, the Supreme Court analyzed a Kentucky Supreme Court ruling that "declined to give effect to two arbitration agreements executed by individuals holding 'powers of attorney.'" The Kentucky court "required an explicit statement [by the principal] before an attorney-in-fact, even if possessing broad delegated powers, could relinquish [the right to a jury trial] on [the principal's] behalf." Kindred Nursing Centers Ltd. P'ship v. Clark, 137 S. Ct. 1421, 1425, 1427 (2017). The Supreme Court found that the Kentucky court had done "exactly what Concepcion barred: adopt a legal rule hinging on the primary characteristic of an arbitration agreement – namely, a waiver of the right to go to court and receive a jury trial" and thereby "flouted the FAA's command to place those agreements on an equal footing with all other contracts." Id. at 1427, 1429. On this basis, the Supreme Court held that the Kentucky judicial rule was preempted by the FAA. Id.

Section 1209 does not "hinge" on an essential characteristic of arbitration, as described in Kindred Nursing Centers – namely, waiver of a jury trial. Instead, Section 1209 hinges entirely on a characteristic of the contracting party – that the party is an infant or an incompetent, and thus incapable as a matter of law of irrevocably agreeing to arbitration.

In Epic Systems, the Court rejected an argument that the National Labor Relations Act preserved a right to bring collective actions. Epic Sys. Corp. v. Lewis, 138 S. Ct. 1612, 1622 (2018). The Court noted that the employees challenging arbitration did not

> suggest that their arbitration agreements were extracted, say, by an act of fraud or duress or in some other unconscionable way that would render any contract

10

> unenforceable. Instead, they object to their agreements precisely because they require individualized arbitration proceedings instead of class or collective ones. And by attacking (only) the individualized nature of the arbitration proceedings, the employees' argument seeks to interfere with one of arbitration's fundamental attributes.

Id. The Court then summarized "Concepcion's essential insight" as follows: "courts may not allow a contract defense to reshape traditional individualized arbitration by mandating classwide arbitration procedures without the parties' consent." Id. at 1623.

Section 1209 does not "reshape traditional individualized arbitration," nor does it alter any other essential characteristic of arbitration. Instead, as discussed above, Section 1209 addresses merely a characteristic of the contracting party – whether he or she is an infant or an incompetent.

Petitioner further contends that Latif v. Morgan Stanley & Co. LLC, No. 18CV11528 (DLC), 2019 WL 2610985 (S.D.N.Y. June 26, 2019), demonstrates that "state law does not easily displace the FAA's policy favoring the enforcement of arbitration agreements." (Pet. Br. (Dkt. No. 12) at 7 (citing Latif, 2019 WL 2610985)) In Latif, the court addressed N.Y. C.P.L.R. Section 7515, which "renders agreements to arbitrate sexual harassment claims null and void '[e]xcept where inconsistent with federal law.'" Latif, 2019 WL 2610985, at *3 (quoting N.Y. C.P.L.R. 7515(b)(iii)). The Latif court held that "application of Section 7515 to invalidate the parties' agreement to arbitrate Latif's claims would be inconsistent with the FAA," in part because "Section 7515 presents no generally applicable contract defense, whether grounded in equity or otherwise." Id. at *3, *6. Latif is therefore plainly distinguishable.

The Court concludes that Section 1209 is not preempted by the FAA. Because the parties agree that the requirements of Section 1209 were not honored (see Pet. Br. (Dkt. No. 12) at 5), Plaintiff's motion to confirm the Award will be denied as to that portion of the Award pertaining to S.J.E. (section (b)), and this portion of the Award will be vacated. Because

11

Respondent has not challenged any other portion of the Award (see Resp. Opp. Br. (Dkt. No. 14) at 27-28), Petitioner motion to confirm the Award will otherwise be granted.

## **CONCLUSION**

For the reasons stated above, Petitioner's motion to confirm the arbitration award is granted in part and denied in part, and the portion of the Award pertaining to S.J.E. – section (b) – is vacated. The Clerk of Court is directed to terminate the motion (Dkt. No. 12) and to close this case.

Dated: New York, New York
      August 11, 2020

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge